**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LUIS TORRES,

                                                Plaintiff,

    v.                                                 6:12-CV-231
                                                        (GLS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.
_____

THOMAS C. ERWIN, ESQ., Erwin, McCane & Daly, for Plaintiff
KRISTINA COHN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income ("SSI") on December 22, 2009, claiming disability beginning July 7, 2009. (Administrative Transcript (T.) 131–143). Plaintiff's applications were denied initially, and plaintiff requested a hearing. (T. 73–74). Plaintiff appeared and testified at a video hearing before an Administrative Law Judge ("ALJ"), Dale Black-Pennington, on March 16, 2011. (T. 29–62). On June 16, 2011, the ALJ denied plaintiff's claims for benefits. (T. 12–20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for

review on December 21, 2011. (T. 1–4).

## II. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering

2

> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III. FACTS

Plaintiff's counsel in this case has reviewed the facts in his brief. (Pl.'s Br. at 5–10). Defense counsel supplemented plaintiff's review of the facts with additional facts in his brief. (Def.'s Br. at 2–11). Thus, the court will adopt the facts as stated by plaintiff's counsel and defense counsel, together with the facts as stated in the ALJ's decision, with any exceptions noted in the following discussion.

### IV. THE ALJ'S DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (T. 14). The ALJ also found that plaintiff

4

had not engaged in substantial gainful activity since the alleged onset date of July 7, 2009. (T. 14).

The ALJ found plaintiff has two severe impairments: degenerative disc disease of the lumbar spine and bilateral degenerative joint disease of the knees. (T. 14). In addition to the two severe impairments, plaintiff has a history of arm pain, which only results in minimal limitation to plaintiff's ability to perform work-related activities. (*Id.*). The ALJ considered the medical evidence and found that plaintiff does not have an impairment that meets or medically equals a listed impairment. (T. 14).

The ALJ considered plaintiff's testimony regarding his low back pain and knee pain, and compared this to his testimony about his daily activities and the weekly volunteer work he does for his church. (T. 15–16). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were only partially credible to the extent they were inconsistent with the ALJ's residual functional capacity ("RFC") assessment. (T. 16).

The ALJ found that objective findings confirmed the existence of plaintiff's impairments, including MRIs revealing degenerative changes in his right knee, tears to his anterior cruciate ligaments (ACLs) in both knees, a radial tear of the medial meniscus in his left knee, and degenerative disc disease of the lower lumbar spine. (T. 16). However, the ALJ also considered that since his accident in 2009, plaintiff has not elected to undergo surgery, which suggests that conservative treatment is controlling his symptoms. (T. 17).

5

The ALJ concluded that plaintiff was capable of performing "less than a full range of medium work": standing for thirty minutes at one time up to a total of two hours in an eight-hour workday; walking for thirty minutes at a time up to a total of one hour in an eight-hour workday; lifting twenty-five pounds frequently and up to fifty pounds occasionally; frequently pushing and pulling, stooping and kneeling; operating foot controls frequently; occasionally climbing or crouching and being exposed to unprotected heights; but not crawling. (T. 15, 18). The ALJ considered plaintiff's treatment records, and concluded that some clinical findings supported plaintiff's testimony of low back and bilateral knee pain, but more recent records indicate that his symptoms are under control. (T. 17).

The ALJ gave great weight to the opinion of consultative physician Suraj Malhotra, who did not make any clinical findings on examination that indicated plaintiff had severe and limiting symptoms from his low back and bilateral knee pain. (T. 17). The ALJ found Dr. Malhotra's findings to be supported by plaintiff's daily activities. (T. 17). The ALJ also accorded some weight to the opinion of Dr. Russell Cecil[1] in October 2009 that plaintiff could return to light duty work if available. (T. 17). The ALJ accorded Physician's Assistant (PA) Nicholas Fanok's opinion some weight, because the ALJ found that PA Fanok seemed to uncritically accept as true claimant's subjective report of symptoms, when clinical findings had improved since plaintiff's initial visit. (T. 18).

---

[1] The ALJ attributes this statement to Dr. Cecil, one of plaintiff's treating physicians, but the statement that plaintiff could return to light duty work, if available, was actually made by Dr. Gerald J. Ortiz, another treating physician, in a medical report dated October 12, 2009. (T. 254).

The ALJ considered the physical requirements of plaintiff's previous work as a driver who picked up donations. (T. 18). The ALJ found that plaintiff's previous work, as he performed it, would be considered light work, and was within plaintiff's RFC. (*Id.*). The ALJ concluded that because plaintiff could perform his past work, he was not under a disability as defined in the Social Security Act from July 7, 2009 through the date of the ALJ's decision on June 16, 2011. (T. 19–20).

V. **PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

(1) The ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Br. 10–11).

(2) The ALJ erred in finding that plaintiff could perform his past relevant work as a driver. (Pl.'s Br. 11–13).

Defendant argues that the ALJ's findings are supported by substantial evidence, and that this court should affirm the findings of the Commissioner. For the following reasons, this court agrees with defendant and will recommend dismissing the complaint.

VI. **DISCUSSION**

    A. **Residual Functional Capacity/Credibility**

        1. **Legal Standards**

            a. **RFC**

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R.

7

§§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### b. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical

8

evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929 (c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

   **2.   Application**

In making the RFC determination, the ALJ weighed the evidence in the medical records, taking into consideration the credibility of plaintiff's testimony regarding his physical limitations. The ALJ found that plaintiff could perform medium work with additional restrictions, which he characterized as "less than a full range of medium work." (T. 14–15). Plaintiff argues that the ALJ's determination that plaintiff can

stand two hours and walk one hour in an eight-hour workday is inconsistent with the RFC stated by the ALJ. Plaintiff argues that the ALJ failed to consider plaintiff's RFC as to prolonged periods of sitting.

Medium work involves, *inter alia*, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The distinction between medium work and light or sedentary work is the ability to lift and carry greater weight. A person who can perform medium work is also presumed to be able to perform light and sedentary work. *Id.* Light work includes jobs that require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." 20 C.F.R. § 404.1567(b). Sedentary work involves sitting, but "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

Plaintiff argues that the ALJ's finding is not supported by substantial evidence because plaintiff cannot perform a full range of medium work, nor can he perform a full range of light or sedentary work due to his alleged inability to sit. (Pl.'s Br. 10–11). However, the ALJ's determination that plaintiff's clinical findings had improved since July 2009 is supported by substantial evidence, and the consultative examining physician found that plaintiff could sit for eight hours in a work day. The ALJ's RFC determination, as described in his function-by-function analysis, is supported by substantial evidence. (T. 18).

On July 10, 2009, plaintiff saw PA Nicholas A. Fanok complaining of knee and

lower back pain. (T. 249). Plaintiff had been in a motor vehicle accident on July 7, 2009, (plaintiff's alleged date of onset), and PA Fanok prescribed Lortab for pain, SOMA for muscle spasms, and MOBIC for inflammation. (T. 249). An MRI of plaintiff's right knee revealed a possible loose body, a tear of his ACL, a possible tear of his Posterior Cruciate Ligament (PCL), and a possible tear of the posterior horn of his lateral meniscus. (T. 252). Physical therapy was recommended for plaintiff's knee and iliotibial (IT) band syndrome, and he was given a cortisone injection in his right knee for the pain. (T. 252).

Plaintiff returned for a follow-up visit on September 10, 2009, complaining of knee pain. (T. 253). Plaintiff stated that the cortisone injection he had received in his right knee on his last visit had helped with his pain, but that the pain in his left knee had since gotten worse. (*Id.*). Plaintiff saw Dr. Gerald Ortiz on October 12, 2009, after having an MRI of both knees, which revealed post-traumatic arthritis in the right knee and a meniscal tear and a chronic ACL tear in the left knee. (T. 254). Plaintiff was given cortisone injections in both knees, and Dr. Ortiz opined that plaintiff "could do a light duty job if it was available to him." (*Id.*).

Plaintiff saw PA Fanok on February 1, 2010, complaining of bilateral knee pain and low back pain. (T. 257). Plaintiff had difficulty with forward flexion and lateral bending to the left due to pain. (*Id.*). Plaintiff was given a cortisone injection in his right knee and given a prescription for a different muscle relaxer, Amrix, for his low back spasm. (*Id.*). PA Fanok completed a Disability Certificate dated February 1, 2010, which stated that plaintiff was sufficiently recovered to return to work, but with

the limitations of lifting no more than twenty pounds, no bending, twisting, or stooping, and he would be unable to sit or stand for prolonged periods. (*See* T. 262). Prior Disability Certificates dated January 4, 2010, November 23, 2009, October 12, 2009, September 10, 2009, July 28, 2009, and July 10, 2009, all stated that plaintiff was unable to return to work, indicating PA Fanok's conclusion that plaintiff's condition had improved by February 2010. (*See* T. 263–67). Plaintiff's treatment throughout this time also included different pain medications. (T. 194, 219, 246).

Plaintiff was involved in another motor vehicle accident on October 29, 2010, and plaintiff saw PA Kevin C. Calyer on December 17, 2010, complaining of pain in both knees and his lower back. (T. 277). PA Calyer concluded that the motor vehicle accident had exacerbated the arthritis in plaintiff's back and knees. (*Id.*). Plaintiff stated that Motrin had been helping with his pain. (*Id.*). PA Calyer instructed plaintiff to continue taking the Motrin and started plaintiff on physical therapy. (*Id.*). On January 18, 2011, plaintiff returned for a follow up and told PA Calyer that he had some numbness in the lateral side of his knee with pain in the center of his back and lumbar spine. (T. 280). Plaintiff attended physical therapy once since his December 2010 visit. (*Id.*). An MRI, dated January 21, 2011, showed an extruded disc at L5-S1 with caudal migration down to the midbody of S1 and some impingement of the left nerve root. (T. 279). As a result, plaintiff received an epidural injection for the pain in his left side. (T. 278).

The ALJ found that plaintiff could meet the lifting and carrying demands of medium work, but included standing and walking restrictions. (*See* T. 14–15). The

12

ALJ accorded great weight to Dr. Malhotra's opinion that plaintiff could sit, stand, and walk for 30 minutes at one time without interruption, and that plaintiff could sit for 8 hours, stand for 2 hours, and walk for 1 hour in an eight-hour work day. (T. 17, 286). Dr. Malhotra examined plaintiff on April 11, 2011, and found that plaintiff appeared to be in no acute distress, with a normal gait, normal station, could walk on heels and toes without difficulty, and could squat fully. (T. 282). Plaintiff had a minimal limitation of 80 degrees of flexion extension in his thoracic and lumbar spines, full lateral flexion bilaterally and full rotary movements bilaterally, no spinal or para spinal tenderness, no sacroiliac joint or sciatic notch tenderness, no spasm, no scoliosis or kyphosis. (T. 283). Plaintiff exhibited a positive straight leg test while supine, but not while seated. (*Id.*).

With continued treatment after each of his motor vehicle accidents, the medical evidence indicates that plaintiff's symptoms improved, and were managed through medication and physical therapy. Plaintiff testified that he counsels members of his church 15 hours per week at the church office and visits members one to three times per week, depending on need. (T. 39). As the ALJ noted, these activities demonstrate plaintiff's ability to do some work-related activities. Plaintiff testified that he continues to drive, and can drive for a half an hour at a time, after which he needs to get out and stretch. (T. 40). Plaintiff also testified that he was able to drive forty to forty-five minutes to his hearing. (T. 40). Plaintiff testified that he regularly takes out the garbage, watches television, goes shopping, reads the newspaper, and enjoys assembling model cars and puzzles. (T. 53–54). These activities further support the

ALJ's determination that plaintiff's limitations do not prevent him from doing work-related activities. Plaintiff testified that injections and steroids have helped temporarily with his pain, and he takes Tylenol and Motrin for his pain. (T. 46).

Substantial evidence supports the ALJ's determination that plaintiff could perform work that does not consist solely of sitting, standing, or walking, which comports with plaintiff's RFC of medium work with additional limitations. The ALJ considered the opinion of PA Fanok, and gave it some weight,[2] which supports the limitations stated by the ALJ. The ALJ also considered the opinion of consultative physician Malhotra and accorded it great weight. Dr. Malhotra examined plaintiff and found that plaintiff could sit up to 8 hours in a work day, which supports the ALJ's RFC determination.

### B. Past Relevant Work
### 1. Applicable Law

At Step 4 of the Commissioner's analysis, a claimant's past relevant work must be assessed. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past 15 years and constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can still do past relevant work, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Where substantial evidence supports the ALJ's conclusions as to whether

---

[2] Although PA Fanok is not an "acceptable medical source" to determine the existence of a medical impairment, the opinions of physicians assistants may be considered in determining the severity of an impairment and how it affects plaintiff's ability to work. 20 C.F.R. § 404.1513 (d)(1).

plaintiff's RFC allows plaintiff to perform his past relevant work, it is unnecessary to remand the case for further development of the record. *See Stenoski v. Comm'r of Social Security*, 7:07-CV-552, 2010 U.S. Dist. LEXIS 24030, at *16–17, 2010 WL 985367 (N.D.N.Y. March 16, 2010).

### 2. Application

The ALJ found that plaintiff could return to his past relevant work as a driver. (T. 18). Plaintiff testified that as a driver, he drove about four hundred miles per week picking up donations from various locations. (T. 60). Plaintiff stated that he drove "all day." (T. 197). Plaintiff estimated that in this job, he walked for four hours a day and stood for four hours per day, which would suggest that he considered this job a combination of these activities with the sitting inherent to driving a vehicle. (*See* T. 197). Plaintiff would be seated while driving, and then walk once he arrived at a destination.

Consultative physician Dr. Malhotra characterized plaintiff's abilities similarly to how plaintiff described his duties as a driver, when Dr. Malhotra indicated that plaintiff could sit, stand, and walk for 30 minutes at one time without interruption, and that plaintiff could sit for 8 hours, stand for 2 hours, and walk for 1 hour in an eight-hour work day. (T. 286). This also comports with plaintiff's testimony that he could drive for 30 minutes at a time. (T. 40). The job, as previously performed by plaintiff, is within the RFC as determined by the ALJ.

Substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform less than a full range of medium work, but that plaintiff could still

perform his past relevant work as a driver.³ Because plaintiff could perform his past relevant work, the ALJ did not need to proceed to Step 5. *See Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (Plaintiff has the "burden to show an inability to return to [his] previous specific job *and* an inability to perform [his] past relevant work generally.") (emphasis in original). The ALJ's decision that plaintiff was not disabled under the Social Security regulations should be affirmed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 21, 2012

_Andrew T. Baxter_
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

³ The important issue addressed by the ALJ at Step 4 was whether plaintiff could perform the functions required by his past relevant work, regardless of any specific exertional category. The fact that the ALJ found that plaintiff's previous work, as he performed it, would be considered light work further supports his conclusion that plaintiff had the ability to perform his past relevant work. (T. 18).